### ALLEN BRADLEY CO. et al. v. LOCAL UNION NO. 3 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS et al.

#### In re VAN ARSDALE et al.

District Court, S. D. New York.
July 10, 1939.

McLanahan, Merritt & Ingraham, of New York City (Hyler Connell, Walter Gordon Merritt, and Burgess Osterhout, all of New York City, of council), for plaintiffs.

Harold Stern, of New York City, for defendants.

CONGER, District Judge.

This is a motion on the part of the plaintiffs to adjudge one Harry VanArsdale, Jr., and the defendant Local Union No. 3, International Brotherhood of Electrical Workers, or either of them, guilty of contempt, and to direct them or either of them to produce certain papers before the Special Master hearing this case. Other incidental relief by way of punishment and imposition of costs is asked for herein.

There is little, if any, dispute as to the facts out of which arose the controversy which resulted in this motion.

The plaintiffs in this action accuse the defendants of a conspiracy to prevent the plaintiffs from selling their electrical products in interstate commerce in the metropolitan district.

Local Union No. 3, one of the defendants, is a labor union (an unincorporated association of journeymen electricians of New York City and vicinity).

Harry VanArsdale, Jr. (not a defendant), is the business manager of the said defendant, Local Union No. 3.

The issues were referred to John Kirkland Clark, as Special Master, to hear and determine and report back to the Court.

The trial before the Special Master commenced on October 14, 1937 and is still going on. At least 134 hearings have been held and about 15,000 pages of testimony taken.

This controversy arose as follows: Harry VanArsdale, Jr., was testifying as one of the defendants' witnesses. He testified that he had in his possession a complete file of the issue of the newspaper known as the "Allied Union News". He stated that he, the business manager of the said Union, had them at the Union headquarters. When asked if he would produce them, he stated that he would not.

On May 23, 1939, at one of the hearings, Howard McSpedon, business agent, was being cross-examined. An article in the June 3, 1938 issue of the "Allied Union News", appearing over the witness' name was offered in evidence. At that time the attorney for the plaintiffs called upon the defendants to produce the complete file of the said newspaper. Thereupon the Special Master ruled: "On the statement made that there is a file of this kept by union headquarters, I will direct its production."

On the hearing of May 25, 1939, the attorney for the defendants reiterated the refusal to produce the file and gave his reasons therefor. The Special Master then stated on the record: (transcript of testimony, page 13403) "As I said before, my judgment is entirely clear that as a matter of logic the evidence seems clearly admissible and since presumptively the other issues of this paper which are now the property of the union procured by one of the officers in the course of his duties, as he testified, there can be no question so far as I see it that a notice to produce those or a subpœna duces tecum for their production should be effective to bring them into Court to enable counsel to make use of them either as direct evidence or as a means of cross-examination."

Thereupon and on May 31, 1939, a subpœna duces tecum regularly issued was duly and properly served on the part of the plaintiffs on Harry VanArsdale, Jr., and defendant Local Union No. 3, requiring them to be present and produce "a copy of each issue of the Allied Union News published from January 1, 1935 to date", before the said Special Master, at the place of trial therein specified on June 2, 1939, at 10 A. M.

No issue is made herein as to the form or regularity of the subpœna, nor as to its service.

On the return date before the said Special Master, VanArsdale, Jr., and the attorney for the defendants, refused to produce the file called for by the said subpœna duces tecum, for reasons which they gave in a statement made to the Court and which is in the record.

Subsequently, and as a result of that refusal, this motion was brought on.

At the outset, let me state that while I think the stand taken by the witness VanArsdale, Jr., and the defendant Local Union No. 3 was legally wrong, yet I find that their refusal to obey the subpœna was not contumacious, but was motivated by reasons which they thought were legal and proper.

A careful reading of the memorandum submitted by the defendants indicates to me that they thought that they were well within their legal rights when they refused to and did not obey the subpœna. No disrespect to the Court was intended. It was an honest difference of opinion. However, I think that they were clearly wrong. This is a very simple issue. A subpœna duces tecum properly issued and served called for the production of certain papers which are in existence and can and may be produced by either the defendant Local Union No. 3 or its business manager without any great inconvenience.

At least the lawful mandate of the Court should have been obeyed, to the extent of bringing the papers properly subpœnaed, into Court where, in the proper time and when the occasion arose for their use, they would be passed upon by the Special Master, as to their competency, materiality and relevancy. The simple obeying of the order of the Court by the production of the papers in no way would harm the defendants. That at least should have been done, particularly in view of the fact that the defendants had failed to take advantage of the opportunity to quash the subpœna by the method provided by the New Rules. Rule 45(b) of the Federal Rules of Civil Procedure.

True, they might be incompetent, irrelevant and immaterial, but how could the Special Master pass on that until the papers or some part of them were offered in evidence or used on the trial.

One of the reasons urged by the defendants for the refusal to produce said file is that the papers therein contained are not material and relevant to the issue.

There is authority to the effect that the Court, on a proceeding to enforce obedience to a subpœna duces tecum, should not inquire into this issue. "A witness is not entitled to resist a subpœna for mere incompetency or irrelevancy". United States et al. v. Union Trust Co. of Pittsburgh, D.C., 13 F.Supp. 286, 287. (See cases cited therein.)

However, I feel, in deciding this motion, that I should not pass on the materiality, competency or relevancy of these papers which I have never seen, and the contents of which I know nothing. I feel that

the Special Master, a well known lawyer and well known in the community for his ability and legal attainments, having heard all of the testimony adduced in these 134 hearings, is better qualified to pass on the materiality, competency and relevancy of these papers than one who has only had the advantage of reading a small fragment of the voluminous testimony.

I might state, however, from reading extracts from some of the newspapers already in evidence, that they might be proper on cross-examination of some of the witnesses for the defendants, particularly of the officers of the defendant who allowed their names to be used in connection with articles therein, and that they might very well be competent when they contain articles under the name of the officials of the Union as showing their sentiments as to the subject of the controversy.

The defendant, as one of its arguments herein, states that the record is already overwhelming and that this whole thing is a scheme on the part of the plaintiffs to make the record so big that it will be unwieldy and that it will, by its very size, prevent an appeal, and that the offer of the introduction of the newspapers is not made in good faith. Defendant, in his brief, states: "The defendant union is straining its resources to meet its share of the heavy expenses arising from the conduct of this interminable reference. It realizes that the plaintiffs have all the advantage in this war of attrition and are only too happy to pour out an unending stream of dollars as long as the defendants are compelled to match the outlay. The defendant Local believes that it is plaintiffs' purpose in subpœnaing the entire file of the issues of this newspaper to add to the already overburdened record thousands of pages of irrelevant matter gleaned from the articles appearing in the publication, under the pretext that such procedure is proper cross examination. In the meantime, of course, the Referee's per diem allowance of $125 will continue."

As much as I might deprecate the voluminous record and the length of the trial of this issue, and as much sympathy as I might have for the judge or judges who will have to review the record, yet I am unable to find that this is a reason for the refusal to produce the file in controversy, if the said newspapers therein contained, or any part of them, are proper, relevant and competent upon the trial of this case. Were I so disposed, it would be impossible for me, on the affidavits presented to me and on the very small part of the testimony attached to the affidavits, to state or to point out who was to blame for the voluminous record and for the length of the trial.

On the argument of this motion before me, each side vehemently accused the other of protracting the trial. I have quoted from the brief of the defendant and it is proper at this time to point out the accusations of the plaintiff against the defendants, concerning the length of the trial.

The plaintiffs, in their brief, among other things, state: "As a matter of fact, the record has expanded to inordinate lengths, due in great fault to the acts of the defendants. The Direct examination of one of plaintiffs' witnesses, Isaac Penner, took approximately one day and a half; his cross-examination by defendants' counsel consumed approximately 21 days. On their defense, defendants introduced voluminous testimony of the general activities of the defendant union to show their eleemosynary character. As a result of this, plaintiffs were compelled on cross-examination to go to further lengths than would otherwise have been necessary to disprove on cross-examination some of the preposterous claims advanced in this direction. In addition defendants have introduced in evidence over 100 contracts between the union and employers, each contract averaging three or four typewritten pages and a number of these so introduced in evidence have been thereafter read into the record, although marked in evidence and before the Special Master. As the latest instance of this unnecessary lengthening of the record by the defendants, at the last hearing on June 16th two documents were received in evidence as plaintiffs' exhibit. Although thus marked and received into evidence, they were read into the record by defendants' counsel and consumed 26 pages of the stenographic minutes. The Special Master commented on this, stating that he would get more out of the exhibit by reading it to himself than he would by listening to counsel. Despite this statement, defendants' counsel read the exhibit into the record."

It should not be necessary for me to point out that, in introducing parts of these newspapers in evidence, it was not necessary and will not be necessary to encumber the record by reading the articles into the record.

I might further point out that just how much the record will be added to by the production of these newspapers, no one can tell at this time. The contents of all of the newspapers certainly will not be introduced into evidence. Just how many articles of these newspapers will be allowed in evidence, it is impossible to state at this time, until they are produced before the Court.

The defendant Local Union No. 3, as part of its argument herein, asks me to intervene with regard to this question of these newspapers and to instruct the learned Special Master. I am satisfied that I have the authority to so do under certain special circumstances, but do not feel, in this case, on this question, the Court would be justified in so doing, for the reasons stated above.

I am satisfied that the learned Special Master is well qualified to pass on these questions, when they come to him.

With regard to the introduction of portions of the newspapers already introduced in evidence, he indicated his ruling clearly, intelligently and well to the point. Without the advantage of having seen the entire record, without the advantage of knowing what is in the newspapers to be produced, I certainly feel that I should not interfere with the rulings of the Special Master.

I find the witness Harry VanArsdale, Jr., and the defendant Local Union No. 3, International Brotherhood of Electrical Workers, to be in contempt for their failure to obey the subpœna duces tecum, and order that the file of the said newspapers in the possession of the said Harry VanArsdale, Jr., and the Local Union No. 3, International Brotherhood of Electrical Workers, be produced before the said Special Master pursuant to the said subpœna duces tecum.

The imposition of punishment and of costs is suspended on the condition that the said VanArsdale, Jr., and the said defendant Local Union No. 3 produce before the said Special Master the said files so required to be produced by the subpœna duces tecum, on the next hearing before the said Special Master, after the service of a copy of the order herein with notice of entry.